# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### ABILENE DIVISION

|  |  |  |
|---|---|---|
| DORIS ROBBINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 1:06-CV-033-C |
| | § | ECF |
| | § | |
| MICHAEL J. ASTRUE[1], | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

**THIS CASE** is before the court upon Plaintiff's complaint filed March 17, 2006, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits under Title II of the Social Security Act. Plaintiff filed a brief in support of her complaint on April 17, 2007, Defendant filed a brief on May 16, 2007, and Plaintiff filed her reply on July 2, 2007. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge reverse the Commissioner's decision and remand this case for further administrative proceedings.

---

[1]    Michael J. Astrue has been appointed as the new Commissioner of Social Security, effective February 12, 2007, and is therefore substituted as Defendant in this case for Jo Anne B. Barnhart, per FED. R. CIV. P. 25(d)(1).

# I.    STATEMENT OF THE CASE

Plaintiff filed an application for disability insurance benefits on March 27, 2000, alleging disability beginning January 3, 1998.  Tr. 21.  Plaintiff's application was denied initially and upon reconsideration.  Tr. 21, 51-54, 58-62.  Plaintiff filed a Request for Hearing by Administrative Law Judge on November 13, 2000, and this case came for hearing before the Administrative Law Judge ("ALJ") on August 14, 2001.  Tr. 21, 49-50, 899-926.  Plaintiff, represented by an attorney, testified in her own behalf.  Tr. 901-21.  Jerry Taylor, a vocational expert ("VE"), appeared and testified as well.  Tr. 922-24.  At the hearing, Plaintiff requested that her alleged onset date be amended to May 1, 1997.  Tr. 21.  The ALJ issued a decision unfavorable to Plaintiff on September 24, 2001. Tr. 18-27.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act.  He found that:  Plaintiff was currently insured for disability insurance benefits under Title II of the Act and Plaintiff had not engaged in substantial gainful activity at any time since May 1, 1997.  Tr. 22, 26.  Plaintiff has "severe" impairments, including pulmonary hypertension, osteoarthritis, right partial anterior cruciate ligament tear, and lumbar facet arthrosis.  *Id*.  Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1.  *Id*.  Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p.  Tr. 25.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning her impairments and their impact on her ability to work were not entirely credible. Tr. 26.

The ALJ found that Plaintiff retained the RFC to perform the requirements of sedentary work activity, limited to jobs that offer the opportunity to occasionally get up and move around at times, in addition to the normal break every two hours and a lunch period, while in the performance of lower-end-of-detail job duties that are not complex and highly-detailed in nature. Having found that Plaintiff could not perform the full range of sedentary work, the ALJ turned to the testimony of the VE. The VE testified that Plaintiff could perform the job of receptionist. Tr. 26-27. The ALJ found that Plaintiff could return to her past relevant work as a receptionist. Tr. 26. Therefore, he concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 21, 26-27.

Plaintiff submitted a Request for Review of Hearing Decision/Order on October 19, 2001. Tr. 14-17. After granting a 40-day extension for the admission of new evidence, the Appeals Council issued its opinion on November 16, 2002, indicating that although it had considered the contentions raised in Plaintiff's Request for Review and the new evidence, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request. Tr. 10-13. On January 9, 2003, the Appeals Council vacated its November 16, 2002, denial of Plaintiff's request for review in order to consider additional evidence. However, after reviewing the additional evidence, the Appeals Council again concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's Request for Review. Tr. 7-9. The ALJ's decision, therefore, became the final decision of the Commissioner.

On February 6, 2002, Plaintiff filed an application for disability insurance benefits alleging disability beginning January 3, 1998. Tr. 449. Plaintiff's application was denied initially and upon reconsideration. *Id*. Plaintiff filed a Request for Hearing by Administrative Law Judge, and this

case came for hearing before the ALJ on April 21, 2003. Tr. 449, 876-98. Plaintiff, represented by a non-attorney, testified in her own behalf. Tr. 878-97. Michael Driscoll, a VE, appeared but did not testify. The ALJ issued a decision unfavorable to Plaintiff on June 20, 2003. Tr. 446-57.

In his opinion the ALJ noted that when the claimant has received a previous determination concerning the same issues, and the determination has become final by either administrative or judicial action, the doctrine of res judicata applies. Tr. 450, 455-56. Due to the issue of res judicata, the date and the evidence considered in this disability decision extends only from September 25, 2001, through December 31, 2002 (the date the claimant was last insured). *Id.*

The ALJ found that between September 25, 2001, and December 31, 2002: Plaintiff had not engaged in substantial gainful activity. Tr. 451, 456. Plaintiff's major depressive disorder was not a severe impairment during the relevant time period. However, Plaintiff has "severe" impairments, including pulmonary hypertension, osteoarthritis in the bilateral knees, osteoarthritis and scoliosis in the lumbar spine, and cardiac left ventricular hypertrophy. *Id.* Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. Tr. 452. Therefore, the ALJ was required to determine whether Plaintiff retained the RFC to perform her past relevant work or other work existing in the national economy.

The ALJ found that Plaintiff retained the RFC to perform sedentary work activity and could return to her past relevant work as a receptionist or a bookkeeper. Tr. 455-56. Therefore, he concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time between September 25, 2001, and December 31, 2002. Tr. 457.

Plaintiff submitted a Request for Review of Hearing Decision/Order on August 22, 2003. Tr. 444-45. The Appeals Council denied Plaintiff's request and issued its opinion on December 19, 2003, indicating that although it had considered the contentions raised in Plaintiff's Request for

Review, it nevertheless concluded that there was no basis for changing the ALJ's decision. Tr. 441-43. The ALJ's decision, therefore, became the final decision of the Commissioner.

On February 3, 2006, Plaintiff requested that the Appeals Council reopen its previous denial based upon new evidence and grant a 30-day extension from the date the Appeals Council responds to the request to file a civil action. On February 17, 2006, the Appeals Council denied the request to reopen but did grant the request for an extension of time to file a civil action.

On March 17, 2006, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.    STANDARD OF REVIEW

An applicant may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful

activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case the ALJ found at step 4 that Plaintiff was not disabled because she was able to return to her past relevant work as a receptionist or a bookkeeper. Tr. 26, 455-56.

## III. DISCUSSION

Plaintiff claims that the ALJ's decision is not supported by substantial evidence. She argues that the ALJ erred in making the step 2 severity determination regarding her mental impairment. She argues that the ALJ erred by failing to comply with the requirements of 20 C.F.R. § 404.1520a and failed to appropriately evaluate her mental impairment using the psychiatric review technique. She further argues that the ALJ erred in evaluating and weighing the opinion of Dr. Randell, her treating physician. Finally, she argues that the ALJ erred in evaluating the report of the consultative psychiatric examiner regarding her Global Assessment of Functioning ("GAF")[2] score.

The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000). Plaintiff's arguments regarding the evaluation of her mental impairment implicates error by the ALJ in the severity determination, in the evaluation of the limitations imposed by her mental impairment with respect to the ALJ's RFC assessment, in the weight given

---

[2]     The GAF score on Axis V is for reporting the client's "psychological, social, and occupational functioning." *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32 ("DSM-IV"). This report of overall functioning is noted to be "useful in planning treatment and measuring its impact, and in predicting outcome." *Id.*

to the opinion of her treating physician regarding the limitations imposed by her mental impairment, and in the evaluation of the opinion of the consultative examiner.

**A.      Whether the ALJ erred by failing to complete a Psychiatric Review Technique form ("PRTF").**

If the ALJ determines that the claimant has a medically determinable mental impairment, he must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. §§ 404.1520a; 416.920a.  He is required to evaluate the degree of functional loss resulting from Plaintiff's mental impairments as set forth in 20 C.F.R. §§ 404.1520a and 416.920a.  *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001).  The ALJ must evaluate the claimant's limitations in four functional areas:  activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation, the part "b" criteria.  A five-point scale is used to rate the degree of limitation in the first three of those functional areas.  20 C.F.R. § 404.1520a (c)(1)-(4).  These four separate areas are deemed essential for work.  *Boyd*, 239 F. 3d at 705 (citing 20 C.F.R. § 404.1520a(b)(3)).  The written decision of the ALJ must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described.  20 C.F.R. § 404.1520a(e)(2).  The PRTF represents one way in which such findings may be documented.  20 C.F.R. § 404.1520a(e).  After the ALJ rates the degree of functional limitation resulting from any mental impairment(s), the ALJ determines the severity of such impairment(s).  20 C.F.R. § 404.1520a(d).  If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment "not severe" at step 2 of the sequential evaluation process.  20 C.F.R. § 404.1520a(c)(1).  If the ALJ finds that the mental impairment is "severe" under 20 C.F.R. § 404.1520a(c)(1), the ALJ must then determine if it meets or equals a listed mental disorder under 20 C.F.R. Pt. 404, Subpt. P, app. 1, 12.00-12.09 and 20 C.F.R. § 404.1520a(c)(2).  If the impairment is severe but does not

reach the level of a listed disorder, then the ALJ must conduct an RFC assessment. *Boyd*, 239 F.3d at 705.

The ALJ did not attach a PRTF to his opinion. Indeed, he found that Plaintiff's mental impairment was not "severe" within the meaning of the regulations. In so finding, he noted that there were no records of psychiatric or psychological treatment or examination until May 2002. Tr. 451. He noted the findings of the consultative examiner, including a GAF score on Axis V[3] of 60. *Id.* He noted that Plaintiff's primary care physician had diagnosed Plaintiff with, and prescribed medication for, depression but indicated that the physician's report of depression was not entitled to probative weight because he was not a licensed mental health professional. *Id.*

The Fifth Circuit has not addressed whether an ALJ's failure to complete a PRTF constitutes reversible error. As Plaintiff correctly notes, several appellate courts have concluded that such failure is grounds for reversal and remand. *See, e.g., Montgomery v. Shalala*, 30 F.3d 98, 100 (8th Cir. 1994) (holding that remand was appropriate where ALJ failed to complete a PRTF and substantial evidence did not support the ALJ's determination that claimant's mental disorders were not disabling); *Hill v. Sullivan*, 924 F.2d 972, 975 (10th Cir. 1991) (*per curiam*); *Stambaugh v. Sullivan*, 929 F.2d 292, 296 (7th Cir. 1991). Other cases have held that the failure to complete a PRTF at the ALJ stage may constitute harmless error under certain circumstances. *See Kelly v. Chater*, 952 F. Supp. 419, 426 (W.D.Tex. 1996) (recognizing that under certain circumstances, failure to complete a PRTF may constitute harmless error); *Buirl v. Apfel*, 1998 U.S. Dist. LEXIS 1583 (N. D. Tex. February 4, 1998) ("even if the ALJ was required to complete a PRTF, his failure to complete the form is harmless error" because the ALJ's decision specifically discusses the

---

[3]     The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client. *See generally, American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 25-30.

claimant's mental impairment and related evidence and because a PRTF was completed at the reconsideration stage and was available to the ALJ).

Section 404.1520a(e)(2) explains the responsibility of the ALJ in evaluating a claimant's medically determinable mental impairment:

> At the administrative law judge hearing and Appeals Council levels . . . the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

In his opinion the ALJ concluded that Plaintiff's mental impairment imposed no limitations on her ability to perform work activity. Tr. 451. While the ALJ's failure to complete a PRTF would not necessarily require remand, the record demonstrates that in his opinion he failed to evaluate the degree of functional loss resulting from Plaintiff's mental impairments as set forth in 20 C.F.R. § 404.1520a; *Boyd*, 239 F.3d at 705. He did not address whether Plaintiff's mental impairment would affect or limit her in the four functional areas identified by the regulations. He did not address the part B criteria. While he did make a finding of non-severity, and while he explained his reasoning for such finding, he did not address the specific functional limitations, if any, that were imposed by Plaintiff's mental impairment. The ALJ clearly failed to "include a specific finding as to the degree of limitation in each of the functional areas described in" 20 C.F.R. § 404.1520a(c).

Plaintiff argues that it cannot plausibly be maintained that the Fifth Circuit sees the "PRTF regulation" as optional. However, as noted in the cases above, the failure to complete a PRTF may constitute harmless error in certain circumstances. The appropriate question becomes whether the failure of the ALJ to complete the PRTF coupled with his failure to address the functional limitations imposed by Plaintiff's impairments as set forth in 20 C.F.R. § 404.1520a is harmless or prejudicial.

An agency must follow its own procedures, even if those procedures are more rigorous than what would otherwise be required. *Newton*, 209 F.3d at 459. Should the agency violate its internal rules and prejudice results, the proceedings are tainted and any action taken cannot stand. *Hall*, 660 F.2d at 119. A harmless error analysis applies to administrative failure to comply with a regulation. *See Frank v. Barnhart,* 326 F.3d 618, 622 (5th Cir. 2003). Violation of a social security ruling or regulation merits remand only when a claimant affirmatively demonstrates prejudice. *Hall v. Schweiker*, 660 F.2d 116, 119 n.4 (5th Cir. [Unit A] 1981) (*per curiam*). The two concepts are closely related. Prejudice is established by showing that additional evidence could have been produced and "that the additional evidence might have led to a different decision." *Newton,* 209 F.3d at 458. An error is harmless unless there is reason to think that a remand might lead to a different result. *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir. 1989). Thus, improprieties noted by Plaintiff will constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

In determining whether this error was prejudicial, the court finds it appropriate, first, to address the other errors claimed by the Plaintiff.

**B.      Whether remand is appropriate because the ALJ  failed to appropriately refer to the *Stone* standard.**

Plaintiff argues that the ALJ's failure to set forth the *Stone v. Heckler* standard in finding that Plaintiff's mental impairment was not "severe" at step 2 of the sequential evaluation process is an error that requires remand. *See Stone v. Heckler*, 752 F.2d 1099, 1106 (5th Cir. 1985).

Under the Social Security Regulations, the severity of an impairment or impairments is considered at the second step of the five-step sequential analysis. *See* 20 C.F.R. § 404.1520. A claimant must show that he or she has a severe medical impairment before the claimant can be

determined disabled. 20 C.F.R. § 404.1520(a)(4)(ii). The regulations further provide that an impairment must significantly limit the person's ability to do basic work activities in order to be considered severe. 20 C.F.R. § 404.1520(c). Thus,

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, [the Commissioner] will find that you do not have a severe impairment and are, therefore, not disabled.

*Id.*

The Supreme Court held that this "severity regulation" is valid on its face and "is not inconsistent with the statutory definition of disability." *Bowen v. Yuckert,* 482 U.S. 137, 146, 154, 107 S.Ct. 2287, 2293, 2298 (1987).

The Fifth Circuit has considered the severity regulation, both before and after the Supreme Court's decision in *Bowen v. Yuckert.* In *Stone*, the Court approved of an earlier construction of the severity regulation that set this standard for determining whether a claimant's impairment is severe:

> [A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.

*Stone*, 752 F.2d at 1101 (quoting *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984). In *Loza v. Apfel*, the Court held that the standard set forth in *Stone* remained the correct standard. *Loza,* 219 F.3d 378 at 392. However, the Commissioner may require a claimant to make a *de minimis* showing that her impairment is severe enough to interfere with her ability to do work under this standard. *Anthony v. Sullivan*, 954 F.2d 289, 293 n.5 (5th Cir. 1992). Thus, in the Fifth Circuit, the claimant need only make a *de minimis* showing that her impairment is severe enough to interfere with her ability to do work to meet the severity threshold.

The Fifth Circuit in *Stone* stated that it would "in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard

is set forth" in the manner specified. 752 F.3d at 1101. "Unless the correct standard is used, the claim must be remanded to the [Commissioner] for reconsideration." *Id.* at 1106.

Defendant argues that any failure to comply with *Stone* is harmless error. *Stone* applies only to cases that determine that a claimant is not disabled at step 2 of the sequential evaluation process, whereas this case was decided at step 4. Def. Brief at 12.

In *Stone* the Fifth Circuit was concerned that too many claimants were being found "not disabled" at an early stage, that is step 2, of the evaluation process. Step 2 requires the ALJ to determine whether a claimant has any impairments that are "severe." If the ALJ finds that a claimant does not have any "severe" impairments at step 2, the evaluation process ends without proceeding to steps 3-5 and the claimant is determined to be "not disabled." The Fifth Circuit in *Stone* explained the reason for the standard that it had established:

> The prevailing idea, then, among the courts and Congress, is that some impairments are so slight that the ability of the claimant to work can be decided without a full evaluation of vocational factors. The factfinder is entitled to follow a sequential process that disposes of those cases at that early stage. But it is impermissible to make that disposition on the basis of a standard of severity that denies disability benefits to claimants who are in fact unable to perform substantial gainful activity.

752 F.2d at 1102-03.

Due to its concern and recent experience regarding cases that had been disposed of on the basis of nonseverity (i.e., at step 2), the Fifth Circuit gave notice of how it would thereafter determine whether the proper standard was applied and the sanction for noncompliance.

> In view of both the [Commissioner's] position in this case and our recent experience with cases where the disposition has been on the basis of nonseverity, we will in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c)(1984) is used. Unless the correct standard is used, the claim must be remanded to the [Commissioner] for reconsideration.

752 F.2d at 1106.

*Stone* appears to require remand in any case in which the ALJ fails to properly reference the *Stone* standard. The court's subsequent rulings, however, have clarified the holding to require remand only when the ALJ failed to reference the *Stone* standard and the case was adjudicated at step 2 of the sequential evaluation process. *See Chaparro v. Bowen,* 815 F.2d 1008, 1011 (5th Cir. 1987); *Jones v. Bowen,* 829 F.2d 524 (5th Cir. 1987); *Lopez v. Bowen,* 806 F.2d 632 (5th Cir. 1986).

The claimant argued in *Chaparro* that the Commissioner was presumed to have applied the incorrect standard because no reference was made to *Stone*. The issue was waived because it was not raised before the district court. The Court stated that, in any event, the "case did not turn on whether or not Chaparro's impairment was severe, but on whether Chaparro could return to his past relevant work – an inquiry unaffected by the test set forth in *Stone*." *Chaparro,* 815 F.2d at 1011. Thus *Chaparro* recognized that "the test set forth in *Stone*" does not apply to a case decided on whether a claimant could return to his past relevant work, a matter determined at step 4. The claimant's argument was considered irrelevant to the disposition of his case which advanced to step 4 for determination. Although the statement of the Fifth Circuit in *Chaparro* is a dictum, it is instructive in this case.

In *Jones* the claimant argued that the court failed to apply the correct legal standard in determining the severity of his impairments as required in *Stone*. 829 F.2d at 527 n.1. He argued that his hypertension was characterized as "mild" which resulted in the denial of benefits. *Id.* The Court held that there was no error similar to that found in *Stone* "where the claimant's request for benefits was prematurely denied based on an improper determination of "non-severity." *Id.* Thus the Court recognized that the *Stone* standard was based upon, and applicable only to, "premature" denials of disability which are based on improper determinations of "non-severity." That occurs only at step 2.

The claimant in *Lopez* cited *Stone* in support of his argument that the ALJ erred in the determination of the severity of his impairments. 806 F.2d at 634 n.1. The Court held that *Stone* did not apply because the ALJ did find that the claimant had severe impairments. *Id.* Claimants found to have severe impairments advance beyond step 2 in the evaluation process. Thus the Court held that the *Stone* standard does not apply to cases that advance beyond step 2.

In more recent cases, the Fifth Circuit has found no merit to claimants' arguments of ALJ error arising out of the failure to correctly apply or state the *Stone* standard where the sequential evaluation process proceeds past step 2. *See Robinson v. Barnhart*, 183 Fed. Appx. 451, 2006 U.S. App. LEXIS 13680, *10 (5th Cir. June 2, 2006) (unpublished decision); *Reyes v. Sullivan*, 915 F.2d 151, 154 n.1 (5th Cir. 1990).

It follows that in cases adjudicated at step 3, step 4, or step 5 of the evaluation process, the ALJ's failure to make reference to the standard established in *Stone* does not, without more, require remand.

In this case it is clear that the ALJ failed to make reference to the *Stone* standard. This case, however, was adjudicated at step 4 based on the ALJ's determination that Plaintiff retained the RFC to return to her past relevant work. Therefore, Plaintiff must establish that the ALJ's failure to make reference to the *Stone* standard constituted prejudicial error in order to obtain a remand. Plaintiff argues that she has effectively demonstrated prejudice because although the ALJ proceeded past step 2, he found that her mental impairment was not "severe" and did not incorporate any limitations into his RFC assessment to reflect the limitations imposed by her mental impairment.

Plaintiff argues that *Anthony*, 954 F.2d 289 and *Estran v. Heckler*, 745 F.2d 340 (5th Cir. 2000), reaffirmed *Stone* and the failure to reference *Stone* entitles the claimant to a remand.

In *Anthony* the ALJ had initially failed to reference the *Stone* standard but had concluded at step 2 of the evaluation process that the claimant did not have any severe impairments. 954 F.2d at

292.  Thus, the claimant was determined to be not disabled at step 2.  That decision was remanded.

On remand the ALJ evaluated the claim under the *Stone* standard at step 2 and again concluded that

the claimant had no severe impairments.  That decision was affirmed.  The court reiterated its

reasons for establishing the *Stone* standard, stating that "we warned that we could not condone the

. . . use of the severity regulation to systematically deny benefits to claimants who otherwise satisfy

the statutory criteria."  954 F.2d at 293.  "*Stone* merely reasons that the regulation cannot be applied

to summarily dismiss, without consideration of the remaining steps in the sequential analysis, claims

of those whose impairment is more than a slight abnormality."  954 F.2d at 294.  Thus *Anthony*

appears to support the other courts that have recognized that the requirements in *Stone* apply only

to cases that are terminated at step 2 with a finding of not disabled.

In *Estran* the Fifth Circuit set aside a prior order affirming the District Court and remanded

the case to determine whether the ALJ applied the correct standard, having found that the claimant's

impairments were not severe, using 20 C.F.R. § 416.921(a) as the applicable standard rather than

the 1968 regulation.

This court is convinced that the cases that have specifically considered and ruled on these

issues should be viewed as setting the proper precedent.  Therefore, the court finds that *Chaparro,*

*Jones, Lopez,* and *Reyes* should be followed in determining that the failure to correctly recite the

*Stone* standard does not require remand in cases that are decided at step 3, step 4, or step 5 of the

evaluation process.  Following that precedent, this court finds a remand for failing to comply with

the *Stone* standard does not necessarily apply to this case because it proceeded to, and was decided

at, step 4.  However, as Plaintiff correctly notes, the ALJ ultimately found that her mental

impairment was not "severe."  While this matter proceeded to step 4, the ALJ's consideration of

Plaintiff's mental impairment ended at step 2 where he found that her mental impairment was not

severe.  The ALJ did not thus incorporate any limitations into the RFC determination to reflect her

mental impairment. In determining whether the ALJ's failure to state the *Stone* standard, along with his failure to complete the psychiatric review technique either by completing the PRTF or by addressing each specific functional area in his opinion, the court finds it necessary to consider Plaintiff's argument that the ALJ erred by failing to appropriately consider her mental impairment in making his RFC determination.[4]

## C.     Whether the ALJ erred in making his RFC assessment.

The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities. Soc. Sec. Ruling 96-5p (July 2, 1996) ("SSR 96-5p"). The RFC assessment is based upon "*all* of the relevant evidence in the case record," including, but not limited to, medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. Soc. Sec. Ruling 96-8p (July 2, 1996) ("SSR 96-8p") (emphasis in original). The ALJ is responsible for determining a claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making the RFC assessment and in determining the limitations imposed by a claimant's impairment(s), the ALJ is instructed to consider the entire record. Soc. Sec. Ruling 96-7p (July 2, 1996) ("SSR 96-8p").

The claimant has the burden to prove that she is disabled within the meaning of the Social Security Act. *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir.1987). A physical or mental impairment is in turn defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The existence of an impairment does not in itself

---

[4]     Plaintiff's argument is considered in two ways – first, whether it demonstrates prejudice from the failure to recite the *Stone* standard; and second, whether the ALJ's RFC assessment is not supported by substantial evidence.

establish disability; a claimant is disabled only if he or she is "incapable of engaging in any substantial gainful activity." *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir.1986). The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

Plaintiff agues that the ALJ erred in making his RFC assessment by failing to incorporate any limitations imposed by her mental impairment, by failing to accord appropriate weight to the opinion of her treating physician as to the limitations imposed by this impairment, and by failing to appropriately consider the opinion of the consultation examiner as to her GAF score of 60.[5]

As an initial matter, the court notes that Dr. G. Alan Trimble's opinion of Plaintiff's GAF score of 60 does not represent a medical opinion regarding any specific limitations imposed by Plaintiff's mental impairment. Rather, it represents a tool he used in the course of his examination, diagnosis, and treatment. In any case, "[w]hile a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002).

In his opinion the ALJ mischaracterized the GAF score of 60 as indicating that her mental impairment was "no more than mild." Tr. 451. However, more problematic is the ALJ's treatment of the opinion of Plaintiff's treating physician, Dr. Randell.

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques

---

[5] The DSM-IV defines a GAF score of 51-60 as moderate symptoms (e.g. flat effect, circumstantial speech, and occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers). *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R.
§ 404.1527(d)(2). On the other hand, "[g]ood cause may permit an ALJ to discount the weight of
a treating physician relative to other experts where the treating physician's evidence is conclusory,
is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise
unsupported by the evidence." *Newton*, 209 F.3d at 456. Moreover, "[a]mong the opinions by
treating doctors that have no special significance are determinations that an applicant is 'disabled'
or 'unable to work.' These determinations are legal conclusions that the regulation describes as
'reserved to the Commissioner.'" *Frank*, 326 F.3d at 620 (citing 20 C.F.R. § 404.1527(e)(1)).

First, Dr. Randell's opinion that Plaintiff was "physically disabled due to her depression from
several years," is an issue reserved to the Commissioner, even if the opinion is made by a treating
physician or some other medical source. *Frank*, 326 F.3d at 620; 20 C.F.R. § 404.1527(e)(1). The
ALJ was not required to attach any special significance to this opinion, nor was he required to give
it any special weight.

Dr. Randall also completed a mental RFC assessment form in which he indicated that
Plaintiff was limited in various respects. Tr. 437-39. The ALJ indicated that he had not given Dr.
Randall's opinion regarding the limitations imposed by Plaintiff's mental impairment "probative
weight" because he was a primary care physician. The regulation cited by the ALJ, 20 C.F.R. §
404.1513 provides that an osteopathic physician such as Dr. Randell is an acceptable medical source.

Unless the Commissioner gives a treating source's opinion controlling weight, the
Commissioner will consider six factors in deciding the weight to give to any medical opinion. 20
C.F.R. § 404.1527(d). The Fifth Circuit held in *Newton* that "an ALJ is required to consider each
of the [six] factors before declining to give any weight to the opinions of the claimant's treating
specialist." *Newton,* 209 F.3d at 456. Thus, the ALJ is required to consider the six factors if he
declines to give the opinion of a treating specialist any weight. Pursuant to Soc. Sec. Ruling 96-2p

(July 2, 1996) ("SSR 96-2p"), and 20 CFR §§ 404.1527(a) and 416.927(a), "medical opinions" are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight. The requirement that the ALJ discuss the six factors set forth in *Newton* and 20 C.F.R. § 404.1527(d) applies only to medical opinions and does not apply to conclusory statements that a claimant is disabled. *Frank*, 326 F.3d at 620.

As noted above, the ALJ is permitted to "discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d 456. SSR 96-2p provides that a medical source statement from a treating source which is well-supported by medically acceptable evidence and which is not inconsistent with other substantial evidence in the record is entitled to controlling weight. *See* SSR 96-2p. This ruling further explains:

> If any of the above factors is not satisfied, a treating source's opinion cannot be entitled to controlling weight. It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.

*Id.* The ALJ may also reject a treating physician's opinion if he finds, with support in the record, that the physician is not credible and is "leaning over backwards to support the application for disability benefits." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985) (citing *Whitney v. Schweiker*, 695 F.2d 784, 789 (7th Cir. 1982)).

In this case the ALJ essentially gave no weight to Dr. Randell's opinions regarding the limitations imposed by Plaintiff's mental impairment. In so finding, he did not address any of the factors set forth in 20 C.F.R. § 404.1527(d) and *Newton*.

Defendant argues that the ALJ did not err because Dr. Randell's opinion was inconsistent with other substantial evidence in the record. He argues that the ALJ would ideally have performed

more of an analysis, but he did not commit reversible error, having expressly relied upon the opinion of Dr. Trimble, the psychiatric consultative examiner, who was an examining specialist. The ALJ did not reject Dr. Randell's statement by pointing to evidence in the record supporting a contrary conclusion, nor did he indicate that Dr. Randell's treatment and progress notes conflicted with such opinion. The ALJ's failure to weigh Dr. Randell's opinion using the *Newton* factors is compounded by his mischaracterization of the GAF score by Dr. Trimble. While the GAF alone does not represent specific limitations imposed by a mental impairment, Dr. Trimble did not indicate any specific limitations imposed by Plaintiff's depression. He specifically opined that Plaintiff's diagnosis on Axis I was depression, that Plaintiff's GAF score was 60, and that her prognosis with current treatment was poor. Tr. 785-86. Neither Dr. Trimble's raw report, nor the ALJ's interpretation of this report as set forth in his decision, indicate that the ALJ was rejecting Dr. Randell's opinion regarding the limitations imposed by Plaintiff's mental impairment based on contradictory evidence from an examining physician. The ALJ's only statement regarding a conflict in the evidence is his statement indicating that a GAF level of 60 demonstrates that Plaintiff's depression was "no more than mild," a statement which was inaccurate. While, as the Defendant argues, Dr. Trimble's report may indicate that Plaintiff's symptoms and presentation are "mild," the appropriate inquiry is whether the ALJ adequately explained in his decision why he declined to give Dr. Randell's opinions any weight. "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). In his opinion the ALJ did not explain why he accorded Dr. Randell's opinion no probative weight, except to cite to 20 C.F.R. § 404.1513, which specifically provides that an osteopathic physician is an acceptable medical source.

In addition, the court notes that although the ALJ found that Plaintiff's mental impairment was not "severe" within the meaning of the regulations, the report of Dr. Trimble, the opinion of the treating physician, and Plaintiff's subjective allegations indicate that Plaintiff's mental impairment was her primary problem with regard to her ability to perform work activity.

The Plaintiff claims several errors were made by the ALJ – his failure to appropriately state the *Stone* standard, his failure to complete the psychiatric review technique, his failure to evaluate the opinion of her treating physician using the Newton factors, and his mischaracterization of the GAF score. Individually, these errors may not have been prejudicial. However, the affect of these errors in this case is cumulative. The ALJ found that Plaintiff's mental impairment was not severe but did not explain this determination through the psychiatric review technique. He inaccurately explained the GAF score, which he used, in part, as the basis for his rejection of the opinion of the treating physician. He rejected the opinion of the treating physician regarding the limitations imposed by Plaintiff's mental impairment but did not point to other substantial evidence in the record to contradict the opinion of the treating physician, did not weigh the opinion of the treating physician using the factors described in *Newton* and 20 C.F.R. § 404.1527(d), and did not otherwise adequately explain his basis for rejecting such opinion.

The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* However, the ALJ's determination "must stand or fall with the reasons set forth in the decision." *Newton*, 209 F.3d at 455.

The court finds that the ALJ's decision is not supported by substantial evidence in the record and that the cumulative errors made by the ALJ in making his severity determination, in conducting the psychiatric review technique, and in making his RFC assessment are prejudicial. Upon remand, the ALJ should more clearly explain his reasons for his evaluation of Plaintiff's mental impairment,

including his severity determination; his RFC assessment and the limitations, if any, imposed by such impairment; and the weight given to the opinions of the treating and examining physicians.

## IV. CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge reverse the Commissioner's decision and remand this case for further proceedings in accordance with this recommendation.

Plaintiff having refused consent to having the United States Magistrate Judge conduct all further proceedings in this case, this case is **TRANSFERRED** back to the docket of the United States District Judge.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1) and Rule 4(a) of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 27th day of August, 2007.

PHILIP R. LANE
UNITED STATES MAGISTRATE JUDGE